IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HUTCHINSON,<br><br>    Petitioner,<br><br> vs.<br><br>JIM HAMLET, Warden,<br><br>    Respondent. | No. C 02-974 JSW (PR)<br><br>**ORDER GRANTING PETITIONER'S MOTION TO EXCLUDE TESTIMONY AND REQUIRING THE PARTIES TO SUBMIT FINAL JOINT PRETRIAL ORDER**<br><br>**(Docket No. 55)** |

    Petitioner, a California state prisoner, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. On May 15, 2006, Respondent filed a motion *in limine*, seeking to have testimony from Respondent's video expert, William Krone, excluded. Petitioner argues that certain testimony from Krone, Respondent's expert video engineer, should be excluded because it is not based on scientifically valid principles, as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, Petitioner contends that proffered testimony from Krone that purports to make adjustments to the geometric calculations used to determine the height of the perpetrator based on an experiment he conducted in 1992 and an "asymmetrical margin of error" are inadmissible under Federal Rule of Evidence 702 and should be excluded. Petitioner contends that testimony from Krone on principles of bio-mechanics and statistics should not be allowed because the testimony doesn't meet the standards of evidentiary reliability and relevance required for such evidence.

II.   <u>Background</u>

    In support of the motion, Petitioner sets out what Krone's identified as the basis

for his opinion in these two areas. According to testimony from his deposition, Krone conducted an experiment in 1992 where he attempted to establish the difference in height attributable to a person's stride and posture. Krone conducted the experiment on a break from shooting an accident reconstruction video. The experiment purported to establish that the difference in height caused by running was conservatively set at two inches. Krone also contends that his 1992 experiment supports his decision to make a further adjustment (adding one inch to the height after adjusting for the perpetrator's location in relation to the camera and the door) based on his assessment of the posture of the perpetrator in the video still.

In his experiment, Krone photographed each of four subjects as they passed through a doorway where a tape measure had been placed. Krone believes he photographed each person four times. Krone did not publish the results, nor has he read literature regarding bio-mechanics or the dynamics of human stride or posture. Krone also does not have any recorded data from the 1992 experiment.

Petitioner also argues for thee exclusion of testimony from Krone that establishes an "asymmetrical margin of error" of plus 2 inches or minus 1 inch based on the inaccuracies of measurements, both due to running and posture and from using Adobe Photoshop to measure the base height of the suspect in the video stills. At the deposition, Krone specified that the addition of 2 inches was attributable to the running and posture adjustments. According to Petitioner, Krone did not offer an explanation of the subtraction of 1 inch at the deposition. However, Respondent contends that Krone stated that 1 inch adjustment was attributable to the use of Photoshop. Krone stated that aside from a junior college statistics course, he had no training in statistics, had never testified as an expert or read any literature regarding margins of error.

In support of the motion to exclude this testimony, Petitioner presents declarations from two experts: one a professor in bio-mechanics and the other in mathematics. The declaration of Dr. Joyce Keyak is offered in support of the motion to exclude testimony

from Krone regarding how the bio-mechanics of running impacts a determination of the perpetrator's height. Keyak's declaration establishes that she reviewed Krone's deposition testimony and based on her review of his experiment, has determined that the testimony offered "utterly fail(s) to comport with any accepted scientific methodology, and is not based on scientifically valid principles." Petitioner's Exhibit A at ¶ 7. Dr. Keyak notes that the reasons are that Krone failed to record his data, so it cannot be reviewed or tested; the sample size was far too small from which to draw any conclusions; there was no statistical analysis to take into account the enormous variety in human subjects; there was no apparent control for variations attributable to race, gender, muscle mass and weight, athletic ability, shoe type, age, speed, height of camera, type of camera, and the distance of the camera from the subjects and the measuring tape; and there was no control to ensure that each person photographed was at a similar point in his or her stride. *Id.* at ¶ 8A-C.

Petitioner also offers a declaration from Professor Farmer, Chairman of the Mathematics Department at Diablo Community College. Professor Farmer offers an opinion that the methodology used by Krone to determine a margin of error "utterly fails to comport with accepted methodology employed in the field of statistical analysis, and is not based on any mathematically valid principles." Petitioner's Exhibit B at ¶ 8. Farmer declares that to determine a statistically valid margin of error, one must obtain and record data; average the data to determine the mean; calculate the standard deviation from the mean; plot the data to determine whether it fits a normal distribution; choose a confidence level; and then calculate the margin of error for that confidence level according to a specific formula. *Id.* at 9A-F. Professor Farmer states that as a statistical matter, Krone's "margin of error" is "entirely meaningless and completely unreliable." *Id.* at ¶ 10.

In response to the motion, Respondent again outlines the method that Krone used in undertaking his 1992 experiment upon which the challenged testimony is based. Respondent argues that notwithstanding expert opinion showing that neither the

adjustments for posture and gait and the margin of error are not scientifically or mathematically based, the Court should admit this testimony, but that "Petitioner's concerns affect the weight of Mr. Krone's testimony and not its admissibility." Respondent fails to offer any evidence which supports his argument that Krone used a "perfectly reasonable way to try to put measurements to what we all know to be true(.)"

II.   Legal Standard

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence if it addresses an issue "'beyond the common knowledge of the average layperson.'" *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (citation omitted). Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The evidentiary relevance and reliability of the principles that underlie a proposed submission is the court's main inquiry under Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993).

A district court's decision to admit expert testimony is reviewed for an abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 416-47 (1997); *see, e.g., Hanna*, 293 F.3d at 1086-87 (in a criminal case, district court abused discretion and defendant entitled to new trial where jury was qualified to determine issues without assistance of expert witnesses, probative value of witnesses' testimony was minimal, impact of testimony was prejudicial, and error was not harmless). Where expert scientific testimony is at issue, pertinent evidence based on scientifically valid principles will satisfy the demands of relevance and reliability. *Daubert*, 509 U.S. at 597. Faced with a proffer of such testimony, the trial judge must determine at the outset, pursuant to Rule 104(a)[1],

---

[1]Rule 104(a) provides that "preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court."

4

whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Id.* at 592. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 593. While the inquiry envisioned by Rule 702 is a flexible one, some general factors for the court to consider include: (1) whether the asserted theory or technique has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error of a particular technique and the existence and maintenance of standards controlling the technique's operation, and (4) the general acceptance within the scientific community. Id. at 593-94. General acceptance is not a necessary precondition to the admissibility of scientific evidence under Rule 702. *Id.* at 597.

      A trial judge's "gatekeeping" obligations under *Daubert* apply not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Depending on the case, the trial judge may consider one or more of the specific factors mentioned in *Daubert*. "*Daubert's* list of factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* A trial court's overly rigid application of the *Daubert* factors to preclude relevant expert testimony constitutes an abuse of discretion and requires reversal. *Sullivan v. United States Dep't of the Navy*, 365 F.3d 827, 833-34 (9th Cir. 2004). "As the expert testimony is based on specialized as distinguished from scientific knowledge, the *Daubert* factors are not intended to be exhaustive or unduly restrictive." *Id.* at 834 (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)).

III.   <u>Analysis</u>

      In this case, the proffered testimony of expert Krone regarding adjustments for posture and gait as well as for "margin of error" fail to meet the preliminary assessment

5

under Rule 104 which establishes that the reasoning or methodology underlying the testimony is scientifically valid. Although Respondent attempts to argue that the experiment conducted by Krone is a perfectly reasonable way to test a principle that is obvious, it has not been established that it is a scientifically sound way to do so. The experiment described by Krone does not comport with proper scientific methodology. As the Supreme Court makes clear in *Daubert*,

> a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." (Citation omitted.)

509 U.S. at 593. Krone's testimony with regard to these adjustments fail to comport with this standard. Moreover, Krone's experiment clearly did not provide for any peer review or scrutiny which would increase the "likelihood that substantive flaws in methodology will be detected." *Id*. Nor does his methodology allow this Court to consider the "known rate of error or potential for error" associated with the methods he employed for reaching them. *Id*. at 594.

It appears that Respondent would have the Court admit Krone's testimony because it is obvious that a person's height will vary when he is running, notwithstanding that Krone's method for establishing how that difference should be calculated is flawed according to basic scientific methods. However, under Rule 702, the Court may not admit such testimony without a proper foundation of reliability. As such, Petitioner's motion to exclude Krone's testimony regarding adjustments for posture and gate as well as his "asymmetric margin of error" is GRANTED (docket no. 55).

IV.   Additional Matters

Since a pre-trial conference held before the Court on May 11, 2006, the parties have apparently agreed to and filed several additional pretrial stipulations and a joint exhibit list (docket nos. 54, 56, 57 and 59). Prior to the hearing, the parties shall file with

the Court an updated joint proposed final pretrial order on disk and hard copies, as provided in this Court's Guidelines for Civil Bench Cases, ¶2.

IT IS SO ORDERED.

DATED: May 23, 2006

JEFFREY S. WHITE
United States District Judge